## In re McKearney

*Marcu, Marcu & Marcu,* for accountants.

CARROLL, J., July 28, 1944.—In these proceedings on July 23, 1935, we adjudged Catherine McKearney to be a weak-minded person unable to administer her own affairs. Thereupon, sur petition of Peter J. McKearney, a brother, and upon the suggestion of counsel, we appointed John J. McKearney, a brother of the ward, and John F. Burgess, Esq., as guardians of her estate. The guardians so appointed entered the required security and otherwise qualified themselves to act, taking into their possession the only property possessed by the ward, which was a sum of money on deposit in the Beneficial Saving Fund Society of Philadelphia in the amount of $7,590.

The guardians filed their accounts as follows: First, February 10, 1939; second, February 11, 1942; and third and final, June 20, 1944. The ward died on March 17, 1944. Accompanying the third and final account is a petition for confirmation of all accounts and for distribution to the administrator c. t. a. of the ward's estate and for discharge of the guardians. Thus there is before us the audit of the three accounts and the petition for distribution, etc.

The first account shows the purchase of a United States Treasury Bond in the principal sum of $5,000 on October 15, 1935, which was sold on April 29, 1943, at a gain of $541.54. On May 1, 1943, the guardians purchased a $4,000 United States War Loan Bond, Series G, which is shown in the principal of the third and final account. The balance of the estate is in cash, bearing no interest.

What is of unusual interest in the accounting is the fact that, on August 5, 1935, less than two weeks after their appointment and two months before they invested

any part of the cash balance, the guardians paid themselves as commission $375 (a fraction less than five percent of the entire estate) and paid their attorneys $250 "on account of fees". On October 2nd an additional $125 was paid to the attorneys as "balance of fees". There is nothing in the record to show any services rendered by the attorneys to the guardians up until this time, though it has been urged upon us that the attorneys are entitled to compensation for the filing of the petition and for services in connection with the hearing which, according to the record, could not have consumed more than 10 minutes of time. The guardians likewise claim credit for payment by them to their attorneys of $30 for preparation of the first account and $50 for preparation of the second account. It is difficult to determine on the extent or quality of services which justify these charges. The first account contains 50 percent more items than are found in the second account, and neither account presents any unusual accounting problem. No similar charge appears in the third account, which may be explained by the fact that with this account the attorneys have submitted to us a decree which includes an allowance of $225 for additional counsel fee. At no time was there presented a petition to the court for allowance for attorney's fees, and the only justification for fees is a letter by the attorneys submitted to the court after the matter came to audit. The justification for the fees claimed is wholly inadequate and serves to impress upon the court the fact that the interests of the attorneys were being conserved to a much greater degree than the estate of the incompetent, which is the primary duty of every guardian in such case and which duty is known to all attorneys and must be shared by them. The items of $50 and $30 are, in any event, improper charges against an estate even if the services of attorneys are engaged to aid in the preparation of the account of a guardian

or, indeed, of any fiduciary. It is the guardian's duty to state his account; that is part of the obligation for which he receives compensation. If he has someone other than himself prepare it, then any charge for such services must be paid by him out of his commissions. He cannot double-charge the ward's estate for his inability, his disinclination, or his indisposition to prepare and state his account. Therefore, these credits in the accounts are disallowed.

The accounts before us are quite simple as they reflect, in addition to the two transactions in the principal account, a series of regular payments to the Commonwealth of Pennsylvania for the maintenance of the ward in a State institution, the payment of the premiums on the bonds, the receipts of the interests on the investment, and the usual few items of cost. It is singular to note that, for the ward herself, the only item is a single payment to the State hospital for clothing, doubtless procured by that institution. Those who accept the responsibility of the administration of the estate of a weak-minded person should realize that first consideration must be given to the welfare and comfort of the ward and before this all other considerations are secondary, even the consideration of guardian's commissions and attorney's fees. From the accounts in this estate, it is quite clear that the considerations were not disposed of in the legal, natural, and proper order. See In re Heft, 22 Pa. C. C. 534 (1899).

A guardian of the estate of a weak-minded person holds the estate as a conservator. The estate is in custodia legis and the guardian is the mere servant of the court, subject to its directions in everything pertaining to its management, including the maintenance of the ward and the payment of fees and commissions: Shaffer v. List, Committee of Shaffer, 114 Pa. 486 (1886).

Acting in such capacity, it is the guardian's duty to request the court for allowances for attorneys for all

services rendered. It has been the practice to allow a five percent commission to guardians in the ordinary estate, but where the size of the estate is large then the rate of commission may be reduced in the discretion of the court. No fixed rate can ever be assumed and the five percent rate applies only in the ordinary case of a small or medium-sized estate. In the case before us no petition for counsel fee was ever presented to the court, and an amount in excess of five percent was taken as credits in the several accounts. We are obliged to assume that these amounts were actually paid to the guardian. The additional amount of $225 was merely included in the decree which was submitted to us. We decline to allow this item. The items in the first account of $125, October 2, 1935, additional counsel fee, and $30, February 2, 1939, as legal services in preparation of the account, and the item in the second account of $50, February 9, 1943, as legal services in the preparation of the account are improper and, hence, disallowed. The guardians (accountants) are surcharged to the extent of $205, the total of these three items.

In allowing the total charge of $250 for all services rendered by the attorneys to the guardians, we do so having in mind those services rendered in presenting the original petition for the appointment and the services rendered in having the ward committed to the State Hospital at Norristown by order of court. For all services, including these latter, we consider the amount allowed to be fully adequate.

"Commissions, fees and charges of all kinds should be allowed only on the most moderate scale of compensation": Equitable Trust Co., etc., v. Garis et al., 190 Pa. 544, 552 (1899).

The guardians have claimed credit for commissions of five percent of the total of both principal and income. These credits are allowed.

The third and final account shows a balance of principal sum, $5,059.85, to which must be added the surcharge above of $205 previously charged against principal account, making a true balance of principal $5,-264.85, which is confirmed. The account also shows a balance of income, $410.16, which is confirmed.

The prothonotary will enter this adjudication and decree nisi and give notice to the guardians or their counsel, and if no exceptions are filed thereto within 10 days the guardians or their counsel will present to the court a form of final decree in conformity with this adjudication to be entered in the case.